Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAMMY FIELDS,<br><br>   Plaintiff,<br><br>   v.<br><br>KIMCO REALTY CORPORATION, MILTON COOPER, CONOR C. FLYNN, MARY HOGAN PREUSSE, PHILIP E. COVIELLO JR., FRANK LOURENSO, HENRY MONIZ, VALERIE RICHARDSON, and RICHARD B. SALTZMAN,<br><br>   Defendants. | Case No:<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Tammy Fields ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1. This is an action against Kimco Realty Corporation ("Kimco" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

1

§§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Kimco and Weingarten Realty Investors ("Weingarten").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Kimco common stock.

7. Defendant Kimco is a real estate investment trust that owns and operates open-air, grocery-anchored shopping centers and mixed-use assets. The Company is incorporated in Maryland and its principal executive offices are located in Jericho, NY. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "KIM."

8. Defendant Milton Cooper ("Cooper") is Executive Chairman of the Board of the Company.

9. Defendant Conor C. Flynn ("Flynn") is Chief Executive Officer and a director of the Company.

10. Defendant Mary Hogan Preusse ("Preusse") is a director of the Company.

11. Defendant Philip E. Coviello Jr. ("Coviello") is a director of the Company.

12. Defendant Frank Lourenso ("Lourenso") is a director of the Company.

13. Defendant Henry Moniz ("Moniz") is a director of the Company.

14. Defendant Valerie Richardson ("Richardson") is a director of the Company.

15. Defendant Richard B. Saltzman ("Saltzman") is a director of the Company.

16. Defendants Cooper, Flynn, Preusse, Coviello, Lourenso, Moniz, Richardson, and Saltzman are collectively referred to herein as the "Individual Defendants."

17. Defendants Kimco and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. The Proposed Transaction**

18. On April 15, 2021, Kimco and Weingarten announced that they had entered into a definitive merger agreement under which Weingarten will merge with and into Kimco, with Kimco continuing as the surviving public company. Under the terms of the merger agreement, each Weingarten common share will be converted into 1.408 newly issued shares of Kimco common stock plus $2.89 in cash. On a pro forma basis, following the closing of the transaction, Kimco shareholders are expected to own approximately 71% of the combined company's equity, and Weingarten shareholders are expected to own approximately 29%. The press release announcing

the Proposed Transaction states, in pertinent part:

### Kimco Realty and Weingarten Realty Announce Strategic Merger

*Creates Industry-Leading Open-Air, Grocery-Anchored Shopping Center and Mixed-Use Platform*

*Strengthens High-Quality Portfolio in Growth Sun Belt Markets and Enhances Future Value Creation Opportunities*

*Expected to be Immediately Accretive to Key Earnings Metrics While Deleveraging Balance Sheet*

*With an Enterprise Value in Excess of $20 Billion, Combined Company to Benefit From Increased Scale and Diversification*

April 15, 2021 06:30 AM Eastern Daylight Time

JERICHO, N.Y. & HOUSTON--(BUSINESS WIRE)--Kimco Realty Corp. (NYSE: KIM), one of North America's largest publicly traded owners and operators of open-air, grocery-anchored shopping centers and mixed-use assets, and Weingarten Realty Investors (NYSE: WRI), a grocery-anchored Sun Belt shopping center owner, manager and developer, today announced that they have entered into a definitive merger agreement under which Weingarten will merge with and into Kimco, with Kimco continuing as the surviving public company. The transaction brings together two industry-leading retail real estate platforms with highly complementary portfolios, creating the preeminent open-air shopping center and mixed-use real estate owner in the country. The increased scale in targeted growth markets, coupled with a broader pipeline of redevelopment opportunities, positions the company to create significant value for its shareholders. The combined company is expected to have a pro forma equity market capitalization of approximately $12.0 billion and a pro forma total enterprise value of approximately $20.5 billion.

Under the terms of the merger agreement, each Weingarten common share will be converted into 1.408 newly issued shares of Kimco common stock plus $2.89 in cash. Based on the closing stock price for Kimco on April 14, 2021, this represents a total consideration of approximately $30.32 per Weingarten share. On a pro forma basis, following the closing of the transaction, Kimco shareholders are expected to own approximately 71% of the combined company's equity, and Weingarten shareholders are expected to own approximately 29%. The parties currently expect the transaction to close during the second half of 2021, subject to customary closing conditions, including the approval of both Kimco and Weingarten shareholders. This strategic transaction was unanimously approved by the Board of Directors of Kimco and the Board of Trust Managers of Weingarten.

\* \* \*

**Leadership and Organization**

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the requisite skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The number of directors on Kimco's Board of Directors will be expanded to nine, with one member of the existing Board of Trust Managers of Weingarten to be appointed to the Kimco Board. Milton Cooper will continue to serve as Executive Chairman of the Board of Directors of the combined company. Mary Hogan Preusse will continue to serve as Lead Independent Director for the combined company.

The Kimco management team will lead the combined company, with Conor Flynn as Chief Executive Officer, Ross Cooper as President and Chief Investment Officer, David Jamieson as Chief Operating Officer and Glenn G. Cohen as Chief Financial Officer. The approach to integration planning will draw from the best practices of both companies to ensure continuity for tenants, employees and other stakeholders. Upon completion of the merger, the company's headquarters will remain in Jericho, N.Y. The company will retain the Kimco name and will continue to trade under the ticker symbol KIM (NYSE).

\* \* \*

**Advisors**

Barclays and Lazard are acting as financial advisors, and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to Kimco. J.P. Morgan is acting as exclusive financial advisor, and Dentons is acting as legal advisor to Weingarten.

\* \* \*

**About Kimco**

Kimco Realty Corp. (NYSE:KIM) is a real estate investment trust (REIT) headquartered in Jericho, N.Y. that is one of North America's largest publicly traded owners and operators of open-air, grocery-anchored shopping centers and mixed-use assets. The company's portfolio is primarily concentrated in the first-ring suburbs of the top major metropolitan markets, including those in high barrier-to-entry coastal markets and rapidly expanding Sun Belt cities, with a tenant mix focused on essential, necessity-based goods and services that drive multiple shopping trips per week. Kimco is also committed to leadership in environmental, social and governance (ESG) issues and is a recognized industry leader in these areas. Publicly traded on the NYSE since 1991, and included in the S&P 500 Index, the company has specialized in shopping center ownership, management, acquisitions, and value enhancing redevelopment activities for more than 60 years.

As of December 31, 2020, the company owned interests in 400 U.S. shopping centers and mixed-use assets comprising 70 million square feet of gross leasable space. For further information, please visit www.kimcorealty.com.

**About Weingarten**

Weingarten Realty Investors (NYSE: WRI) is a shopping center owner, manager and developer. At December 31, 2020, the Company owned or operated under long-term leases, either directly or through its interest in real estate joint ventures or partnerships, a total of 159 properties which are located in 15 states spanning the country from coast to coast. These properties represent approximately 30.2 million square feet of which our interests in these properties aggregated approximately 20.7 million square feet of leasable area. To learn more about the Company's operations and growth strategies, please visit www.weingarten.com.

19. On May 28, 2021, Defendants caused to be filed with the SEC a Form S-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

20. The Registration Statement, which recommends that Kimco shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Kimco's and Weingarten's financial projections; (ii) the financial analyses performed by Kimco's financial advisors, Barclays Capital Inc. ("Barclays") and Lazard Frères & Co. LLC ("Lazard"), in connection with their fairness opinions; and (iii) potential conflicts of interest involving Barclays.

21. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Kimco's Reasons for the Merger; Recommendations of the Kimco Board of Directors; (ii) Opinion of Kimco's Financial Advisors; and (iii) Certain Unaudited Prospective Financial Information.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Kimco

6

shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Kimco's and Weingarten's Financial Projections

23. The Registration Statement omits material information concerning Kimco's and Weingarten's financial projections.

24. With respect to the prospective financial information of Kimco on a stand-alone basis, the Registration Statement fails to disclose: (1) all line items underlying (i) Cash NOI, (ii) FFO as Adjusted per share, (iii) Unlevered Free Cash Flow, and (iv) Unlevered Free Cash Flow (excluding Albertsons dividends); (2) Kimco's net income projections;[1] and (3) a reconciliation of all non-GAAP to GAAP metrics.

25. With respect to the prospective financial information of Weingarten on a stand-alone basis, the Registration Statement fails to disclose: (1) all line items underlying (i) Cash NOI, (ii) FFO per share, and (iii) Unlevered Free Cash Flow; (2) Weingarten's net income projections;[2] and (3) a reconciliation of all non-GAAP to GAAP metrics.

26. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses

---

[1] According to the Registration Statement, "[t]he National Association of Real Estate Investment Trusts (which we refer to as "NAREIT") defines FFO *as net income/(loss) available to Kimco's common shareholders* . . ." *See* Registration Statement at 60 (emphasis added). Therefore, Kimco's net income projections exist and must be disclosed.

[2] According to the Registration Statement, "NAREIT defines FFO *as net income/(loss) available to WRI's common shareholders* . . ." *See* Registration Statement at 61 (emphasis added). Therefore, Weingarten's net income projections exist and must be disclosed.

performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

27. When a company discloses non-GAAP financial metrics in a Registration Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[3]

28. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited June 7, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

### 2. Material Omissions Concerning the Financial Advisors' Analyses

29. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by Barclays and Lazard.

30. The valuation methods, underlying assumptions, and key inputs used by Barclays and Lazard in rendering their purported fairness opinions must be fairly disclosed to Kimco shareholders. The description of Barclays' and Lazard's fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Kimco shareholders are unable to fully understand Barclays' and Lazard's fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

#### A. *Barclays' Analyses*

31. With respect to Barclays' "*Selected Comparable Company Analysis*" and "*Selected Precedent Transaction Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company and transaction Barclays observed in its analyses.

32. The Registration Statement fails to disclose the following concerning Barclays' "*Discounted Cash Flow Analysis*" of Kimco: (1) Kimco's projected after-tax unlevered free cash flows for fiscal years 2021 through 2025, and all underlying line items; (2) the terminal value of Kimco as of December 31, 2025; (3) the individual inputs and assumptions underlying the (i) range of after-tax discount rates of 7.25% to 7.75%, and (ii) perpetuity growth rates of 2.75% to 3.25%; (4) the current market value of Kimco's investment in Albertsons Companies Inc.; (5) the total debt and preferred equity as of December 31, 2020; (6) cash as of December 31, 2020; and (7) the fully diluted number of shares of Kimco common stock.

9

33. The Registration Statement fails to disclose the following concerning Barclays' "*Discounted Cash Flow Analysis*" of Weingarten: (1) Weingarten's projected after-tax unlevered free cash flows for fiscal years 2021 through 2025, and all underlying line items; (2) the terminal value of Weingarten as of December 31, 2025; (3) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of 3.25% to 3.75%, and (ii) range of after-tax discount rates of 7.75% to 8.25%; (4) the total debt and cash as of December 31, 2020; and (5) the fully diluted number of Weingarten common shares.

### B. *Lazard's Analyses*

34. The Registration Statement fails to disclose the following concerning Lazard's "*Discounted Cash Flow Analysis*" of Kimco: (1) the stand-alone unlevered, after-tax free cash flows that Kimco was forecasted to generate during the fiscal years ending December 31, 2021 through the fiscal year ending December 31, 2024, and all underlying line items; (2) the range of terminal values for Kimco; (3) the individual inputs and assumptions underlying the (i) range of exit capitalization rates of 5.5% to 6.5%, and (ii) range of discount rates of 8.0% to 9.0%; (4) the stand-alone cash net operating income attributable to Kimco for the fiscal year ending December 31, 2025, and all underlying line items; (5) the net value of other assets and liabilities; and (6) the value of Kimco's investment in Albertsons, marked to market as of April 13, 2021.

35. With respect to Lazard's "*Selected Public Companies Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company Lazard observed in its analyses.

36. The Registration Statement fails to disclose the following concerning Lazard's "*Discounted Cash Flow Analysis*" of Weingarten: (1) the stand-alone unlevered, after-tax free cash flows that Weingarten was forecasted to generate during the fiscal years ending December 31,

2021 through the fiscal year ending December 31, 2024, and all underlying line items; (2) the range of estimated terminal values for Weingarten; (3) the individual inputs and assumptions underlying the (i) selected range of exit capitalization rates of 5.5% to 6.5%, and (ii) range of discount rates of 8.0% to 9.0%; (4) the stand-alone cash net operating income attributable to Weingarten for the fiscal year ending December 31, 2025, and all underlying line items; and (5) the net value of other assets and liabilities.

37. With respect to Lazard's "*Comparable Public Companies Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of each company Lazard observed in its analyses.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Barclays

38. The Registration Statement omits material information concerning potential conflicts of interest involving Barclays.

39. The Registration Statement provides that Barclays may receive "an additional fee of up to $4,000,000 payable in Kimco's sole discretion[.]" The Registration Statement, however, fails to disclose the circumstances under which Barclays may receive "an additional fee of up to $4,000,000 payable in Kimco's sole discretion" and whether the Company intends to pay Barclays such a fee.

40. The Registration Statement provides that "Barclays has performed various investment banking and financial services for Kimco and WRI in the past, and expects to perform such services in the future, and has received, and expects to receive, customary fees for such services." The Registration Statement then lists the purported services that Barclays provided Kimco within the past two years.

41. The Registration Statement, however, fails to disclose the amount of compensation

Barclays received or expects to receive for providing such services to Kimco within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

42. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

43. The omission of the above-referenced information renders the Registration Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

46. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the

mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

47. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Registration Statement.

52. Each of the Individual Defendants was provided with or had unlimited access to

copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9

promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: June 7, 2021　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　**HALPER SADEH LLP**

　　　　　　　　　　　　　　　　　　　　　By: /s/ Daniel Sadeh
　　　　　　　　　　　　　　　　　　　　　Daniel Sadeh, Esq.
　　　　　　　　　　　　　　　　　　　　　Zachary Halper, Esq. (to be admitted *pro hac vice*)

15

667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*